**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EMPIRE EQUITIES CAPITAL CORP., | : | Case No. 09-12751 (ALG) |
| | : | |
| Debtor. | : | |
| | : | |

---------------------------------------------------------------x

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

BROWN RUDNICK, LLP
By: Daniel J. Saval, Esq.
Jeffrey L. Jonas, Esq.
Keith R. Walsh, Esq.
Attorneys for CapitalSource Finance, LLC
and CIG International, LLC
One Financial Center
Boston, Massachusetts 02111

BAKENROTH FRANKEL & KRINSKY, LLP
By: Mark Frankel, Esq.
Attorneys for the Debtor
489 Fifth Avenue
New York, NY 10017

ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE

Capital Source Financing, LLC and CIG International, LLC (the "Movants"), have moved for an order granting relief from the automatic stay to terminate a contract with the above-captioned Debtor, or alternatively, to compel its rejection. On May 15, 2009, the Court held a hearing on this matter, which concluded with an oral ruling denying the motion. This memorandum of decision memorializes the Court's decision.

The relevant facts are undisputed and uncomplicated. The Debtor entered into an option contract to purchase from the Movants three loans secured by real property located at 423 West Street, New York City.[1] The Debtor initially paid the Movants $100,000 in advance, with this deposit to be applied against the purchase price at the closing or be retained by the sellers if the transaction did not close. The contract, as originally agreed, had a deadline of March 16, 2009. The Debtor obtained two extensions of the deadline for an additional downpayment of $600,000. The first extension pushed the deadline to April 20, 2009 and the second to April 30, 2009 at 12:00 p.m., time being of the essence. On April 30, 2009, thirty-nine minutes before the closing deadline, the Debtor filed the above-captioned Chapter 11 bankruptcy petition, without having proffered the purchase price to the Movants. The Debtor admits having filed the petition to use the time that it asserts is provided in §§ 365 and 108(b) of the Bankruptcy Code to raise the balance of the purchase price, close the transaction and avoid the forfeiture of its downpayment. The Movants contend that neither §§ 365 nor 108(b) applies under the circumstances of this case and thus that cause exists under § 362(d) to lift the automatic stay. At a minimum, the Movants also assert, the Court should require the Debtor to "reject the contract immediately."

## DISCUSSION

### *I. Section 365 of the Bankruptcy Code*

Section 365(d)(2) of the Bankruptcy Code authorizes a debtor in possession to assume or reject an executory contract at any time before the confirmation of a Chapter

[1] Although both parties in their pleadings refer to the agreement as a purchase contract, the terms of the agreement are more appropriately described as an option contract. The outstanding principal on the loans is approximately $21,000,000.

11 plan, subject to court approval. 11 U.S.C. § 365(d)(2). Although the Bankruptcy Code does not define the term "executory contract," a contract is usually deemed executory when "performance remains due to some extent on both sides." H.R.Rep. No 95-595, Cong., 1st Sess., 347 (1977); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522, n. 6 (1984).[2]

Where a party must take certain action within a given time period, or a contract expires by its own terms post-petition, courts disagree as to whether a debtor's rights under § 365 persist notwithstanding the time requirements. *See* 2 *Collier on Bankruptcy* ¶ 108.03[3](15th ed. rev. 2008).[3] In a recent, comprehensive opinion on § 365, the Second Circuit stated, "[e]xecutoriness and the debtor's rights with respect to assumption or rejection of an executory contract are normally assessed as of the petition date . . . ." *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 381 (2d Cir. 2008). On the other hand, the Court also observed, referring to contracts that expire postpetition by their own terms or by the debtor's actions: "[a] contract's mere executory nature as of the commencement of the proceeding—without more—will not guarantee the debtor the availability of § 365's assumption and rejection provisions."

[2] Some courts disagree with this definition of the term "executory contract." *Mitchell v. Street (In re Streets & Beard Farm Partnership)*, 882 F.2d 233, 235 (7th Cir. 1989); *In re Spectrum Info. Tech., Inc.*, 190 B.R. 741, 746-47 (Bankr. E.D.N.Y. 1996). There is also a split of authority on whether an option contract is executory in nature and thus governed by § 365. *Compare In re Robert L. Helms Constr. and Devel. Co.*, 139 F.3d 702, 705-07 (9th Cir. 1998) (an option contract is not executory in nature), *with In re Simon Transp. Servs. Inc.*, 292 B.R. 207, 218-20 (Bankr.D.Utah 2003) (an option contract is executory). The Second Circuit Court of Appeals has not decided any of these issues. As discussed below, the Court finds that the Debtor has no rights under § 365 for other reasons and thus need not reach these issues.

[3] The text there discusses several cases that hold or assume that § 365 is applicable when a contract is executory on the petition date, and that it allows a Chapter 11 debtor until the confirmation date to assume or reject it, as provided in § 365(d)(2). Other cases come to the opposite conclusion, holding that § 108(b) is the sole source of additional time where a contract expires by the passage of time post-petition. See Part II of this decision for the effect of § 108(b) on this case.

*Id.* at 383. There is substantial authority holding that § 365 is unavailable to a debtor in a case, such as the present one, where the passage of a time-of-the-essence deadline, which is a material default under applicable New York law, in effect terminates the contract. *See*, *e.g., In re New Breed Realty Enters., Inc.*, 278 B.R. 314, 322-23 (Bankr.E.D.N.Y. 2002), and cases cited therein.[4]

In any event, putting aside the fact that the option period expired by its own terms, with no need for any act on the part of the Movants, the Bankruptcy Code as amended in 2005 makes it clear that § 365 provides no recourse to this Debtor because its default under the contract cannot be cured and, accordingly, the contract cannot be assumed. When there has been a default in an executory contract, a debtor in possession must comply with three requirements before a contract can be assumed: (i) cure any outstanding default or provide adequate assurance that the default will be promptly cured; (ii) compensate counterparties to the contract for any pecuniary loss or provide adequate assurance of compensation; and (iii) provide adequate assurance of future performance under the contract. *See* 11 U.S.C. § 365(b)(1)(A)-(C). These requirements are intended to provide the non-debtor party with the benefit of its bargain by assuring substantial compliance with the terms of the contract. *See* 3 *Collier on Bankruptcy* ¶ 365.05[3] (15 ed. rev. 2008).

Before the enactment of the 2005 Amendments to the Bankruptcy Code, courts disagreed on the effect of the cure requirements of § 365 on non-monetary defaults. *Compare In re Claremont Acquisition Corp., Inc.*, 113 F.3d 1029, 1033 (9th Cir. 1997), followed by *New Breed,* 278 B.R. at 321 (debtor must cure all material non-monetary

[4] New York law governs the contract at issue herein. (Loan Purchase Agreement, Exh. A, ¶ 8.2, ECF Doc. No. 4.)

defaults and if cure is impossible, contract cannot be assumed), *with Eagle Ins. Co. v. BankVest Capital Corp.*, 360 F.3d 291, 296-301 (1st Cir. 2004); *In re Walden Ridge Dev., LLC*, 292 B.R. 58, 66-67 (Bankr.D.N.J. 2003) (debtors are relieved from the obligation to cure non-monetary defaults altogether). This division of authority arose in part from the pre-2005 language of § 365(b)(2)(D), as the statute was ambiguous as to whether it exempted from cure all non-monetary defaults or just penalty provisions triggered by non-monetary defaults. *See* 3 *Collier on Bankruptcy* ¶ 365.05[3][c] (15th ed. rev. 2008).[5] In 2005 Congress revised the language of § 365(b)(2)(D) by including the word "penalty" as a modifier to the word "provision," making it clear that most non-monetary defaults are not exempted from the cure requirements. 11 U.S.C. § 365(b)(2)(D).

At the same time, Congress also gave debtors limited relief from the obligation to cure non-monetary prepetition defaults, and it partially overruled the result in *Claremont*. Congress did so, however, not by rejecting *Claremont's* statutory reading of § 365(b)(2)(D) but by adding new language in § 365(b)(1)(A) that requires a cure only of defaults other than those "arising from any failure to perform non-monetary obligations *under an unexpired lease of real property*." 11 U.S.C. § 365(b)(1)(A) (emphasis added).[6] By amending § 365(b)(1)(A) only with respect to unexpired leases of real property,

[5] Prior to the 2005 Amendments, §365(b)(2)(D) excluded from the cure requirements of 365(b)(1)(A) "the satisfaction of any penalty rate or provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease." Some courts read the statute "in the disjunctive, as excusing the debtor's obligation to cure *either* a penalty rate *or* a provision relating to a default arising from a breach of a nonmonetary obligation. Other courts read it in the conjunctive, as excusing the debtor's obligation to cure penalty rates and penalty provisions arising from a nonmonetary default." Wolf-Smith, *Bankruptcy Reform and Nonmonetary Defaults—What Have They Done Now?*, 24 Am. Bankr. Inst. J. 6 (Aug. 2005) (internal citations omitted). The language of the amended statute is the same with the addition of the word penalty, as follows: "the satisfaction of any penalty rate or *penalty* provision arising from any . . . ." 11 U.S.C. §365(b)(2)(D) (emphasis added).

[6] Debtors only have limited time to cure such defaults under non-residential real property leases. 11 U.S.C. § 365(b)(1)(A).

however, Congress provided no room for the contention that non-monetary defaults in non-lease executory contracts are exempt from the cure obligation. *See* 3 *Collier on Bankruptcy* ¶ 365.05[3][c] ("Personal property leases and nonlease executory contracts are expressly excluded."). As Congress is presumed to act with knowledge of existing judicial precedent when enacting legislation, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381-82 (1982), the 2005 amendments thus establish that a debtor must cure most defaults arising from an executory contract that is not a real property lease. Although the parties here have spent many pages arguing whether the Debtor's default is monetary or non-monetary, where an executory contract is involved that distinction is no longer of much relevance.

In light of these developments, the real issue is that the Debtor's default cannot be cured at all. A default precludes assumption of an executory contract under § 365 if it is both incurable and "material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange." *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990); *see also New Breed*, 278 B.R. at 321. Courts examine the provisions of the underlying contract and non-bankruptcy law to determine the nature of a default and the cure it requires, for purposes of § 365. *See In re Shangra-La, Inc.*, 167 F.3d 843, 848-49 (4th Cir. 1999); *In re Biazo*, 314 B.R. 451, (Bankr.D.Kan. 2004) ("[I]n order to assume a contract or lease under § 365(b), the trustee must cure most defaults the debtor has committed under the contract or lease, and the underlying agreement and applicable nonbankruptcy law control what must be done to cure the default."). Thus it is critical that the default in this case was both material and incurable. The Debtor did not default by failing to make a payment; it had no obligation to take up the option to purchase the

loans. (Loan Purchase Agreement, Exh. A, ECF Doc. No. 4.) The Debtor's default was in failing to take action within the time provided for in the contract. Under New York law, "the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates defaulting party's right to enforce the contract," since the time-of-the-essence provision is an essential bargained for term of the contract. *See New Breed*, 278 B.R. at 322-23, 325, and cases cited therein. Under the uncontested facts of this matter, the Debtor's failure to close on time is incurable and the contract cannot be assumed under § 365.

***II. Section 108(b) of the Bankruptcy Code***

Movants further argue that § 108(b) is inapplicable to the instant case and does not give the Debtor 60 days after the petition date to exercise the option. Section 108(b) in relevant part provides:

> if applicable nonbankruptcy law . . . or an agreement fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b). Movants reason that the statute provides only for an extension of time to "cure a default" and thus by definition does not apply to "incurable" defaults such as the one at issue here.

Movants are correct when they contend that the clause in § 108(b) specifically relating to defaults does not apply here, as applicable non-bankruptcy law establishes that

the default at issue is incurable. Section § 108(b), however, gives a debtor broader rights than the power to cure a default; it also permits a debtor to "perform any other similar act . . . ." 11 U.S.C. § 108(b). As several courts have concluded, this provision allows a debtor 60 days after the order for relief to take up an option that would otherwise have expired. *See In re Santa Fe Development, Inc*., 16 B.R. 165 (9th Cir. BAP 1981); *In re G-N Partners,* 48 B.R. 462 (Bankr.D.Minn. 1985); *In re Future Growth Enters*., 61 B.R. 469 (Bankr.E.D.Pa. 1986). The debtor in each of these cases had filed a bankruptcy petition to extend an option period to close a transaction, and each court found the "other similar act" clause of § 108(b) to be applicable. In *Santa Fe Development*, the Court concluded that the "act of making a payment to extend an escrow or consummate an executory contract" was akin to "other acts similar to filing a demand, notice or curing a default." 16 B.R. at 168. Following the reasoning of *Santa Fe Development*, the Court in *G-N Partners* found that the clause "perform any other similar act" warranted a broad reading of § 108(b). 48 B.R. at 467. Similarly, the Court in *Future Growth* concluded that "[t]he exercise of an option falls squarely within the 'paperwork' provision of Section 108(b)." 61 B.R. at 471.

Movants fail to discuss any of these cases and instead urge the Court to follow the pre-Code decision in *Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998 (1st Cir. 1979), *cert. denied*, 444 U.S. 992 (1979). There, the Court held that § 11(e) of the Bankruptcy Act (the predecessor of § 108(b)) did not extend the date for taking up an option contract. However, § 11(e) of the Bankruptcy Act lacked the clause "perform any similar act" which was included in § 108(b) of the Code.[7] Even though the decision in

---

[7] Section 11(e) of the Bankruptcy Act read as follows:

*Good Hope Refineries* contains *dicta* relating to § 108(b), the Court's reasoning focused on the question whether the "default" clause of the then new section applied to option contracts. 602 F.2d at 1003. *Good Hope Refineries* is very limited precedent in the instant case.

One Bankruptcy Court has rejected the rationale supporting the application of § 108(b) to option contracts. *See In re Durability, Inc.*, 273 B.R. 647, 663, n. 12 (Bankr.N.D.Okla. 2002), *rev'd on other grounds*, 166 Fed. Appx. 321 (10th Cir. 2006). The *Durability* analysis of § 108(b), however, was influenced by a Tenth Circuit pre-Code case similar to *Good Hope Refineries*, and with little further explanation it concluded that the "broad" reading of the other courts was not warranted. *Id.* at 663, n. 12. The *Durability* analysis did not consider that the Tenth Circuit, in an earlier decision in the *Durability* case, had endorsed a broad reading of § 108(b), observing that "the statute includes a broad catchall extending the time in which a debtor or trustee may perform any other similar act . . . ." *In re Durability Inc.*, 212 F.3d 551, 558-59 (10th Cir. 2000); *see also In re G-N Partners*, 48 B.R. at 467 ("Congress included the language 'perform any other similar act'. . . . to give a trustee at least 60 days after the filing of a case to preserve the interest of the estate by doing those things which the debtor

---

> Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement, or in the proceeding or by applicable Federal or State law, as the case may be.

11 U.S.C. § 29(e) (repealed 1979.)

neglected to do or was unable to do within the originally prescribed time."); H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 318 (1977) (describing § 108(b)'s legislative purpose as preserving a debtor's rights). The *Durability* decision, accordingly, is not persuasive.

The forgoing does not mean that every time-of-the-essence option contract can, with impunity, be extended for 60 days by an unscrupulous optionee who files a bankruptcy petition. The contract counter-party can move to dismiss a Chapter 11 petition that is filed for improper purposes. *See In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1313 (2d Cir. 1997); *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991). Movants have made no such motion, however, and there is no allegation in this case that this Debtor was not financially distressed on the date it filed for Chapter 11 protection.[8]

**CONCLUSION**

For the reasons set forth above, the Movants' motion to lift the automatic stay is denied, and the Debtor has 60 days from the petition date or until June 29, 2009, to exercise the option. An appropriate order is being entered herewith.

Dated: New York, New York
June 3, 2009

*/s/ Allan L. Gropper*
UNITED STATES BANKRUPTCY JUDGE

[8] Movants have also moved pursuant to § 365(d)(2) to reduce the Debtor's time to assume or reject the option contract under § 365, assuming the Debtor had any rights under that section. Even though the Court does not have to reach that issue, the record provides ample grounds to set the termination date of the option contract at the conclusion of the 60-day period under § 108(b). Movants have shown that further delay in closing a sale may decrease the value of their loans and place an unfair burden upon them, and the Debtor has admitted that its "principal is prepared to raise the money himself by borrowing against unencumbered property he controls" in order to close the transaction within 60 days from the filing date. (Debtor's Objection to Lift Stay Mot., ¶ 8, ECF Doc. No. 8.) Therefore, even if §365 were applicable, the Court would reduce the Debtor's time to assume or reject to June 29, 2009, which is the end of the extension period under § 108(b). Moreover, it does not appear that any authority under § 108(b) considers whether the contract counter-party would be able to file a claim for damages under the contract on account of the delay in closing. Such possible issue is left for further determination, if necessary, at a later stage of this case.