**BROWN RUDNICK LLP**
Daniel J. Saval
Howard S. Steel
Seven Times Square
New York, New York 10036
(212) 209-4800

-and-

Jeffrey L. Jonas
Keith R. Walsh
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

*Counsel to CapitalSource Finance LLC*
*and CIG International, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| EMPIRE EQUITIES CAPITAL CORP., ) | |
| ) | Case No. 09-12751 (ALG) |
| ) | |
| Debtor. ) | |
| ) | |

**CAPITALSOURCE FINANCE LLC AND CIG INTERNATIONAL, LLC'S**
**(I) REPLY TO DEBTOR'S OPPOSITION TO THE DISMISSAL MOTION OF**
**CAPITALSOURCE FINANCE LLC AND CIG INTERNATIONAL, LLC AND**
**(II) OPPOSITION TO DEBTOR'S CROSS MOTION FOR SUMMARY JUDGEMENT**

TO THE HONORABLE ALLEN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

CapitalSource Finance LLC and CIG International, LLC ("CIG" and together with CapitalSource Finance LLC, "CapitalSource"), by and through their undersigned counsel, hereby submit this (i) Reply to Debtor's Memorandum of Law in Opposition to the Dismissal Motion of CapitalSource Finance LLC and CIG International, LLC and (ii) Opposition to Debtor's Cross Motion for Summary Judgment and respectfully state as follows:

# PRELIMINARY STATEMENT[1]

1. CapitalSource has been prejudiced long enough by the lack of finality over its rightful possession of $700,000 in Deposits that the Debtor paid in connection with the Assignment Agreement. The Assignment Agreement terminated many months ago and this Court has already ruled, through a final order, that CapitalSource is entitled to retain the Deposits.

2. Pursuant to the *Order Denying Lift Stay Motion and Motion to Compel Rejection* dated June 3, 2009 [Docket No. 15] (the "June 3rd Order"), CapitalSource is entitled to retain the Deposits. The Debtor now seeks to collaterally attack the June 3rd Order by asserting a legal challenge well outside of the proper time period to do so, and without demonstrating any exceptional circumstances for relief from the June 3rd Order.

3. If the Court decides to assess the Debtor's legal arguments (a step CapitalSource respectfully submits is not necessary or appropriate here), the Court will find the Debtor's arguments are entirely without merit. The plain language of the Publication Requirement specifically excludes invalidation of contracts based on a foreign limited liability company's failure to publish in accordance with the Publication Requirement. Additionally, a natural reading of the statute, as supported by case law provides that subsequent compliance, as CIG has done, provides for *nunc pro tunc* annulment of any consequences of a violation of the Publication Requirement. Moreover, there is no dispute that CapitalSource Finance, LLC, which owns two of the three mortgage notes at issue, was in compliance with the Publication Requirement at all relevant times and is not implicated by the Motion.

---

[1] Capitalized terms not otherwise defined in the Preliminary Statement shall have the meanings set forth in this Reply.

2

**BACKGROUND FACTS**

4. On February 13, 2009, CapitalSource and the Debtor entered into a Loan Purchase and Sale Agreement, as amended (the "Assignment Agreement") pursuant to which, among other things, the Debtor agreed to purchase: (a) three loans made by CapitalSource and secured by, among other things, mortgages on certain real property located at 423 West Street, New York, New York; and (b) the loan documents evidencing the same. Pursuant to the Assignment Agreement, the Debtor agreed to a closing date of March 16, 2009, and conveyed $100,000 to an escrow agent as a nonrefundable deposit.

5. At the Debtor's request the closing date was twice extended, first to April 20, 2009, and subsequently to April 30, 2009, in exchange for additional nonrefundable deposits by the Debtor in aggregate amount of $600,000, for a collective amount of $700,000 on deposit (the "Deposits").

6. On April 30, 2009, minutes before the scheduled closing, the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor remains in possession of its assets and continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. Pursuant to the June 3rd Order, this Court ordered that, if the Debtor did not close the transaction under the Assignment Agreement by June 29, 2009, "the Agreement is deemed terminated and the Seller [CapitalSource] may retain all deposits provided thereunder without further notice and/or order of this Court, unless the Seller, in its sole discretion, shall agree in writing to extend the date for performance under the Agreement."

8. On August 25, 2009, the Debtor filed its *Application* for an order pursuant to 11 U.S.C. § 327(a) authorizing the Debtor to retain Goldberg Weprin Finkel Goldstein LLP as its

3

substitute counsel in place and stead of Backenroth Frankel & Krinsky LLP [Docket No. 22].

9. On September 4, 2009, CapitalSource filed its *Objection of CapitalSource Finance LLC and CIG International, LLC to Debtor's Application to Retain Goldberg Weprin Finkel Goldstein LLP as Substitute Counsel* [Docket No. 25] (the "Retention Objection") asserting that substitute counsel was unnecessary as: (i) the June 3rd Order expressly allowed CapitalSource to retain the Deposits (and the Debtor has no assets); (ii) any challenge to the order would be time-barred; and (iii) the Debtor's proposed statutory construction to collaterally attack the June 3rd Order was unfounded.

10. On December 9, 2009, CIG filed notice with the New York Secretary of State of the publication of its articles of incorporation, in satisfaction of New York Limited Liability Company Law (the "NYLLCL") Section 802 (the "Publication Requirement"). CapitalSource Finance LLC was in compliance with the Publication Requirement at all relevant times, as conceded by the Debtor. See Debtor's Motion for Summary Judgment, at p. 5.

11. The Court entered its *Order Authorizing Retention of Substitute Attorneys for the Debtor and Establishing a Briefing Schedule* on February 9, 2010 [Docket No. 29], in which the Court deemed the Retention Objection to be a motion to dismiss the Debtor's further challenge to the enforceability of the underlying Assignment Agreement (the "Motion to Dismiss").

12. On March 15, 2010, the Debtor filed its *Memorandum of Law in Opposition to the Dismissal Motion of Capital Source Finance LLC and CIG International, LLC and in Support of Debtor's Cross Motion for Summary Judgment* [Docket No. 40] (the "Motion").

**ARGUMENT**

**I.    The Debtor's Motion Is An Improper And
Time-Barred Collateral Attack On The June 3 Order.**

13.    As fully briefed in the Retention Objection and incorporated herein, the Debtor's attempt to revoke the nonrefundable Deposits after it failed to perform under the Assignment Agreement, and after months of delays, is time-barred and procedurally improper.

14.    Pursuant to the June 3rd Order, this Court directed that if the Debtor did not close the transaction under the Assignment Agreement by June 29, 2009, "the [Assignment] Agreement is deemed terminated and the ***Seller [CapitalSource] may retain all deposits provided thereunder without further notice and/or order of this Court***, unless the Seller, in its sole discretion, shall agree in writing to extend the date for performance under the Agreement." (emphasis added).

15.    Therefore, by the clear language of the June 3rd Order, on June 30, 2009, the Assignment Agreement was deemed terminated and CapitalSource was entitled to retain the Deposits.

16.    Now, almost ten months after entry of the June 3rd Order, the Debtor seeks to collaterally attack that order. The deadline to move for modification of the June 3rd Order, however, was <u>no later than 10 days</u> after the entry of the order, pursuant to Fed. R. Civ. P. 59(e) (made applicable to this proceeding by Fed. R. Bankr. P. 9023).[2]  Therefore, the Debtor was time-barred from filing its Motion.

---

[2]    Effective December 1, 2009, Fed. R. Civ. P. 59(e) was amended to require that a motion to alter or amend a judgment be filed no later than 28 days after entry of the judgment. The 28-day time period is inapplicable here because the June 3rd Order was entered well before the effective date of the amendment. Even if amended period was applicable, the Debtor's Motion was filed well in excess of the 28-day period.

5

17.     The only remaining avenue for the Debtor to attack the June 3rd Order is to seek relief from judgment pursuant to Fed. R. Civ. P. 60, which the Debtor has not done.  For that reason alone, the Debtor's Motion should be denied.  However, even if the Motion were properly before the Court, the Debtor fails to overcome the high hurdle required for demonstrating relief from a final order.  See Fed R. Civ. P. 60(b) (enumerating grounds for relief from final judgment).  In fact, "[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."  United States v. Int'l Bhd. Of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001); see also Paddington Partners v. Bouchard, 34 F.3d 1132, 1142 (2d Cir. 1994); Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).  The burden of proof to demonstrate that there are "exceptional circumstances" is on the party seeking relief from judgment.  See Paddington, 34 F.3d at 1142.  Here, the Debtor provides no evidence that exceptional circumstances exist.  In fact, the Debtor's papers entirely fail to address the basis for collaterally attacking the June 3rd Order.

18.     The sole reason the Debtor filed this Chapter 11 proceeding was to protect its rights under the Assignment Agreement – the estate's only significant asset – and seek an extension of its ability to perform thereunder.  See First Day Affidavit of Daniel Rokach (stating purpose for filing as "to preserve the value of the subject acquisition for the benefit of the Debtor's estate and the Debtor's creditors").  Now, after obtaining such extension and still failing to perform, the Debtor is reversing course and claiming that the Assignment Agreement was never valid in the first instance.  The Debtor's current position is not only an about face but undermines the entire purpose of this Chapter 11 filing.

19.     The Debtor has not and can not set forth any grounds to disturb the June 3rd Order.  Therefore, the Court should deny the Debtor's Motion, and enter an order granting

6

CapitalSource's Motion to Dismiss.

## II. The Plain Language Of The Statute Militates For Contract Enforcement.

20. The language of the Publication Requirement reads, in relevant part:

> Within one hundred twenty days after the filing of the application for authority with the department of state, a copy of the same or a notice containing the substance thereof shall be published once in each week for six successive weeks, in two newspapers of the county within this state in which the office of the foreign limited liability company is located, one newspaper to be printed weekly and one newspaper to be printed daily, to be designated by the county clerk.
> . . .
> The failure of a foreign limited liability company to cause such copy or notice to be published and such certificate of publication and affidavits of publication to be filed with the department of state within such one hundred twenty day period or the suspension of such foreign limited liability company's authority to carry on, conduct or transact business in this state pursuant to this paragraph *shall not limit or impair the validity of any contract or act of such foreign limited liability company*, or any right or remedy of any other party under or by virtue of any contract, act or omission of such foreign limited liability company, or the right of any other party to maintain any action or special proceeding on any such contract, act or omission, or right of such foreign limited liability company to defend any action or special proceeding in this state, or result in any member, manager or agent of such foreign limited liability company becoming liable for the contractual obligations or other liabilities of the foreign limited liability company. (emphasis added).

N.Y. [LLC] Law § 802 (McKinney 2006).

21. Almost identical language is used in NYLLCL § 206, which is the corresponding statute requiring publication for New York resident limited liability companies (generally, "LLCs").

22. Both NYLLCL §§ 206 and 802 were amended in 2006 to change the consequences for the failure publish from the former prohibition on "maintaining any action or special proceeding in this state" to the current language suspending an LLC's ability "to carry on, conduct or transact business in this state." Compare N.Y. [LLC] Law §§ 206, 802

7

(McKinney 2006) with N.Y. [LLC] Law §§ 206, 802 (McKinney 2005) (the "2006 Amendment").

23. There is no dispute that CapitalSource Finance LLC, one of the Mortgage Sellers, has at all relevant times been in compliance with the Publication Requirement. See Debtor's Motion for Summary Judgment, at pg. 5 ("CapitalSource satisfied these requirements"). This fact alone forecloses the majority of the Debtor's argument, as CapitalSource Finance LLC owns two of the three mortgages at issue.

### A. The Plain Language of the Publication Requirement Requires Contract Enforcement.

24. The language of the statute is eminently clear: "The failure of a foreign limited liability company to cause such copy or notice to be published . . . shall not limit or impair the validity of any contract or act of such foreign limited liability company." NYLLCL § 802(b)(i) (the "Contract Exception"). The Contract Exception predates the 2006 Amendment, and has modified the Publication Requirement since the New York Limited Liability Company Law was enacted in 1994. 1994 N.Y. Sess. Laws, ch. 576, § 206(c).

25. The New York Appellate Division for the First Department has confirmed a plain language reading of the Contract Exception under NYLLCL § 206. See Barklee Realty Co. v. Pataki, 765 N.Y.S.2d 599, 602 (N.Y. App. Div. 2003) ("[T]he *company's* failure to file the required proof of publication shall not impair the validity of any of *its* contracts.") (emphasis added).

26. The New York Court of Appeals has consistently held that statutes should be interpreted to effectuate the intent of the Legislature, construing clear and unambiguous statutory language "to give effect to the plain meaning of the words used." Patrolmen's Benevolent Association v. City of New York, 41 N.Y.2d 205, 208 (1976); Doctors Council v. New York

City Employees' Retirement System, 71 N.Y.2d 669, 674-675 (1988); Raritan Development Corp. v. Silva, 91 N.Y.2d 98, 106-107 (1997). Beyond all other considerations, the text of the statute remains the best evidence of the legislature's intent. Polan v. State Insurance Department, 3 N.Y.3d 54, 58 (2004).

27. The Debtor attempts to distract from the Contract Exception's patent foreclosure of its argument, by dwelling at length on the legislature's supposed intent, parsing various terms in the statute, and encouraging this Court to consider what the Debtor contends is a case of first impression under New York state law. However, regardless of the meaning of the phrase "authority to carry on, conduct or transact business in this state shall be suspended," the Contract Exception makes perfectly clear that the legislature did not intend for the validity and enforcement of contracts to be impacted.

28. The Debtor insists that the Contract Exception applies only to entities contracting with the nonpublishing party. However, the rights of counterparties are expressly addressed by the language that follows – i.e., "or any right or remedy of any other party under or by virtue of any contract." Courts "generally do not presume that words chosen by the Legislature have no meaning." Crucible Materials Corp. v. New York Power Authority, 13 N.Y.3d 223, 230 (2009). Nevertheless, the Debtor's insistence on obscuring the legislature's clear mandate that the failure to publish "shall not limit or impair the validity of any contract or act of such foreign limited liability company" would produce such a result.[3]

---

[3] The Debtor's suggested reading of the Publication Requirement would also raise issues of its constitutionality. See U.S. Const. art I, § 10 ("No State shall pass any Law impairing the Obligation of Contracts."). Given that the Publication Requirement has been attacked as unconstitutional in the past, in Barklee Realty Co. v. Pataki, it would make sense that the legislature was seeking to avoid a potentially unconstitutional construction. 765 N.Y.S.2d at 606. The Barklee Court ultimately found the Publication Requirement constitutional. However, the court noted in *dicta* that it might find differently had the Publication Requirement altered "the adjudication of justice" by "impair[ing] the validity of any contract." Id.

9

29.     Thus, based on the plain language of the statute and general rules of statutory construction, CIG's failure to comply with the Publication Requirement has no impact on its authority to enter or the validity of the Assignment Agreement.[4]  Accordingly, this Court should deny the Debtor's Motion for Summary Judgment and enter an order granting CapitalSource's Motion to Dismiss.

### B.     CIG Has Obtained Retroactive Compliance.

30.     CIG is presently in compliance with the Publication Requirement, as the Debtor concedes. Motion at 2, 5.  Pursuant to the plain language of the statute, upon a filing demonstrating substantial compliance with the publication requirements, "such suspension of such foreign limited liability company's authority to carry on, conduct or transact business shall be annulled." NYLLCL § 802(b)(i).

31.     The term "annulled" has been consistently construed in this context to mean that "subsequent compliance with the [Publication Requirement] warrants *nunc pro tunc* application." 2004 McDonald Ave. Realty, LLC v. 2004 McDonald Avenue Corp., 2007 WL 6889356, at * 3 (N.Y. Sup. Ct. June 4, 2007) (interpreting NYLLA § 206, which largely mirrors the language of NYLLA § 802); see also Willoughby Rehabilitation and Health Care Ctr., LLC v. Webster, 2006 WL 3068961, at * 3 (N.Y. Sup. Ct. Oct. 26, 2006); Echelon Photograph, LLC v. Dara Partners, L.P., 2006 WL 685029, at * 8 (N.Y. Civ. Ct. Jan. 25, 2006); Acquisition America VI, LLC v. Lamadore, 784 N.Y.S.2d 329, 331 (N.Y. Civ. Ct. 2004). As such, CIG's

---

[4]     As CIG's authority to enter into the Assignment Agreement is belied by the Contract Exception itself, this forecloses the Debtor's argument that CapitalSource misrepresented its authority to enter into, and the validity of the Assignment Agreement. Moreover, the Debtor's assertion that the Assignment Agreement is invalid would preclude it from pursing a claim for breach of contract. E.g., Wilderhomes, LLC v. Zautner, 825 N.Y.S.2d 564, 566 (N.Y. App. Div. 2006) (explaining that to state a cause of action for breach of contract, plaintiff must allege that an enforceable contract existed between the parties at the time of breach).

subsequent compliance with the Publication Requirement provides for *nunc pro tunc* annulment of any prior violation.

## **CONCLUSION**

32.    In summary, in order for the Court to even entertain the Debtor's invitation to rule on a purported issue of first impression under New York state law, the Court would have to: (i) determine that the Debtor's collateral attack on the June 3rd Order is both timely and procedurally proper; (ii) read the Contract Exception out of the Publication Requirement statute; (iii) find that CIG's delay in complying with the Publication Requirement should be imputed to CapitalSource Finance, LLC (which was in compliance at all relevant times); and (iv) determine that CIG's subsequent compliance with the Publication Requirement does not have retroactive effect. As discussed herein, the Debtor has not set forth any grounds for the Court to make any of these determinations. Therefore, this Court should deny the Motion and enter an order granting CapitalSource's Motion to Dismiss.

**WHEREFORE,** on account of the reasons set forth herein, CapitalSource respectfully requests that this Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>: (i) granting the Motion to Dismiss; and (ii) denying the Motion; and (iii) granting CapitalSource such other and further relief as is just and appropriate.

Dated: April 9, 2010　　　　　　　　　　**BROWN RUDNICK LLP**
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　/s/ Daniel J. Saval
　　　　　　　　　　　　　　　　　　　　Daniel J. Saval
　　　　　　　　　　　　　　　　　　　　Howard S. Steel
　　　　　　　　　　　　　　　　　　　　Seven Times Square
　　　　　　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 209-4800
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 209-4801

　　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　Jeffrey L. Jonas
　　　　　　　　　　　　　　　　　　　　Keith R. Walsh
　　　　　　　　　　　　　　　　　　　　One Financial Center
　　　　　　　　　　　　　　　　　　　　Boston, Massachusetts 02111
　　　　　　　　　　　　　　　　　　　　(617) 856-8200

　　　　　　　　　　　　　　　　　　　　*Counsel to CapitalSource Finance LLC*
　　　　　　　　　　　　　　　　　　　　*and CIG International, LLC*