UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK         **NOT FOR PUBLICATION**
------------------------------------------------------------x
                                      :
In re:                                :    Chapter 11
                                      :
EMPIRE EQUITIES CAPITAL CORP.,        :    Case No. 09-12751 (ALG)
                                      :
                    Debtor.           :
                                      :
------------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER

APPEARANCES:

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
Counsel to the Debtor
  By:  Kevin J. Nash
1501 Broadway, 22nd Floor
New York, New York 10036

BROWN RUDNICK LLP
Counsel to CapitalSource Finance LLC and
CIG International, LLC
  By:  Daniel J. Saval
       Howard S. Steel
Seven Times Square
New York, New York 10036

  By:  Jeffrey L. Jonas
       Keith R. Walsh
One Financial Center
Boston, Massachusetts 02111

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is a motion by CapitalSource Finance, LLC ("CapitalSource") and CIG

International, LLC ("CIG" and together with CapitalSource, the "Mortgage Sellers") to dismiss

the Debtor's challenge to the enforceability of an underlying contract between the parties and the

Mortgage Sellers' retention of the deposit provided therein. The Debtor has cross-moved for

summary judgment. For the reasons set forth below, the Mortgage Sellers' motion to dismiss is granted, and the Debtor's motion for summary judgment is denied.

## Background

The relevant facts are undisputed and are discussed in more detail in this Court's opinion dated June 3, 2009, 405 B.R. 687 (Bankr. S.D.N.Y. 2009) (the "Memorandum of Decision"). In brief, the Debtor entered into an option contract with the Mortgage Sellers to purchase three loans secured by real property located at 423 West Street, New York, New York (the "Assignment Agreement"). Pursuant to the Assignment Agreement, the Debtor originally agreed to a closing date of March 16, 2009, and conveyed a $100,000 deposit to an escrow agent. The Debtor subsequently obtained two extensions of the closing deadline in exchange for an additional deposit of $600,000, bringing the total to $700,000 (the "Deposit"). The first extension pushed the deadline to April 20, 2009 and the second to April 30, 2009 at 12:00 p.m. The contract provided that time was of the essence.

On April 30, 2009, thirty-nine minutes before the closing deadline, the Debtor filed the above-captioned Chapter 11 bankruptcy petition, without having proffered the purchase price. In the Memorandum of Decision, implemented by order dated June 3, 2009 (the "Order"), the Court held that the Debtor's time to perform the Assignment Agreement was extended to 60 days from the date of the commencement of its Chapter 11 bankruptcy case, or until June 29, 2009, pursuant to 11 U.S.C. § 108(b). It rejected the Debtor's contention that under § 365 of the Bankruptcy Code, it had until confirmation to assume the contract. The June 3, 2009 Order further provided that if the Debtor did not close under the Assignment Agreement by the 60th day on June 29, 2009, the Assignment Agreement would be deemed terminated and that the Mortgage Sellers "may retain all deposits provided thereunder without further notice and/or

2

order of this Court," unless the Mortgage Sellers agreed in writing to further extend the date for performance.

The Debtor did not pay the purchase price by June 29, 2009, and the Mortgage Sellers did not agree to extend the closing date. Then, on August 25, 2009, the Debtor filed an application for an order authorizing the Debtor to retain substitute counsel for the express purpose of challenging the retention of the Deposit by the Mortgage Sellers on grounds that CIG lacked authority to enter into the Assignment Agreement because it failed to satisfy a provision of New York Limited Liability Company Act (the "N.Y. LLC Law").[1]

## Discussion

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *DeJesus v. Sears, Roebuck Co.*, 87 F.3d 65, 69 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). On a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009). A motion for summary judgment under Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056, may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] A hearing was held on September 10, 2009 to consider the Debtor's application to retain substitute counsel and the objections thereto filed by the Mortgage Sellers. For the reasons stated at the hearing, the Court granted the Debtor's application but, with the parties' consent, treated the retention application, and the objection thereto by the Mortgage Sellers, as the initial pleading on Debtor's challenge to the enforceability of the underlying contract and the Mortgage Seller's retention of the deposit provided therein.

of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *see also Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993).

The Mortgage Sellers first contend that the instant proceeding is an untimely collateral attack of the June 3, 2009 Order, which provided that if the Debtor did not close under the Assignment Agreement by June 29, 2009, the Assignment Agreement would be deemed terminated and the Mortgage Sellers "may retain all deposits provided thereunder without further notice and/or order of this Court". The Order was issued in connection with a motion for relief from stay by the Mortgage Sellers that raised as issues whether the Assignment Agreement was assumable under 11 U.S.C. § 365 and whether the provisions of 11 U.S.C. § 108(b) provided the Debtor additional time to perform and close thereunder. The motion was a summary proceeding, and the Order did not adjudicate any grounds that the Debtor might have to challenge the validity of the Assignment Agreement. *Cf. Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that adversary proceeding issues are not to be decided as part of a motion to assume). The Debtor did not expressly waive its right to challenge the validity of the Assignment Agreement or forfeit its ability to raise the issue.

Nevertheless, assuming the allegations of the complaint to be true, the Debtor's challenge to the Assignment Agreement and to the forfeiture of the Deposit is without merit as a matter of law. Before doing business in New York, a foreign limited liability company must make a filing with the New York Department of State pursuant to N.Y. LLC Law § 802.[2] In addition,

---

[2] The Debtor' papers initially cited § 206 of the N.Y. LLC Law. It is undisputed that CIG is a foreign limited liability company and is not subject to N.Y. LLC Law § 206, which only applies to domestic limited liability

> Within one hundred twenty days after the filing of the application for authority with the department of state, a copy of the same or a notice containing the substance thereof shall be published once in each week for six successive weeks, in two newspapers of the county within this state in which the office of the foreign limited liability company is located, one newspaper to be printed weekly and one newspaper to be printed daily, to be designated by the county clerk….

N.Y. LLC Law § 802(b)(i) (McKinney 2006). In 2006, N.Y. LLC Law § 802 was amended; the consequences of a failure to publish changed from the former prohibition on a foreign LLC's ability to maintain "any action or special proceeding in this state" to the current suspension of a foreign LLC's ability "to carry on, conduct or transact business in this state." *See* 2005 N.Y. Sess. Laws page no. 1809-11 (McKinney).

The Debtor argues that because CIG failed to comply with the publication requirement under N.Y. LLC Law § 802 until December 9, 2009, CIG "lacked the requisite authority to enter into the [Assignment Agreement] to begin with, and could not pursue subsequent legal proceedings in bankruptcy to enforce a forfeiture of the Deposits." As an initial matter, it is evident from the Assignment Agreement, and the Debtor does not dispute, that CapitalSource owns two of the three mortgages at issue, and has at all relevant times been in compliance with the publication requirement. (Assignment Agreement 1-2). Thus, the Debtor's challenge to the Mortgage Sellers' right to retain the Deposit is limited to the amount that is attributable to one of the mortgages, the one owned by CIG.

In any event, the Debtor's position as to the mortgage owned by CIG is untenable for at least two reasons. First, the language in N.Y. LLC Law § 802 providing for suspension of an entity's ability "to carry on, conduct or transact business in" New York for failure to comply with the publication requirement is immediately followed by the following language: "The

---

companies. The statutory provision governing foreign limited liability companies doing business in New York is N.Y. LLC Law § 802, the relevant portions of which are virtually identical to § 206. The Debtor's claim will therefore be analyzed under § 802 rather than § 206.

failure of a foreign limited liability company to cause such a copy or notice to be published…shall not limit or impair the validity of any contract or act of such foreign limited liability company, or any right or remedy of any other party under or by virtue of any contract, act or omission of such foreign limited liability company…." N.Y. LLC Law § 802(b)(i) (McKinney 2006).  Thus, while the language of the statute does not detail the exact effects of suspension of an entity's ability to carry on, conduct or transact business in New York, it does provide that suspension does not limit or impair, *inter alia*, the validity of any contract or act of the entity.

Without supporting authority, the Debtor maintains that this proviso must be read to allow only an unknowing counterparty, and not a nonpublishing party, to enforce a contract. Such an interpretation would contravene the plain language of the statute.  Moreover, the statute expressly deals with the rights of the counterparty when it provides that suspension does not limit or impair "any right or remedy of any other party under or by virtue of any contract, act or omission of such foreign limited liability company…." *Id.*  The Legislature knew how to distinguish between the rights of the party who fails to publish and the rights of the counterparty when it wanted to do so.

The Debtor's argument fails for the additional reason that CIG is presently in compliance with the publication requirement of N.Y. LLC Law § 802.  Pursuant to N.Y. LLC Law § 802(b)(i), upon a filing demonstrating substantial compliance with the publication requirement, "such suspension of such foreign limited liability company's authority to carry on, conduct or transact business shall be annulled."  New York courts have interpreted the word "annulled" in N.Y. LLC Law § 206, which mirrors the above-quoted language in N.Y. LLC Law § 802, to mean that "subsequent compliance with the [publication requirement] warrants *nunc pro tunc*

6

application." *2004 McDonald Ave. Realty, LLC v. 2004 McDonald Avenue Corp.*, 2007 WL 6889356, at * 3 (N.Y. Sup. Ct. June 4, 2007); *see also Willoughby Rehabilitation and Health Care Ctr., LLC v. Webster*, 2006 WL 3068961, at * 3 (N.Y. Sup Ct. Oct. 26, 2006). While the Debtor is correct that the foregoing cases interpret the word "annulled" as it relates to the right to seek legal redress in New York courts, the Debtor provides no basis for its contention that the use of the word "annulled" in the statute would not have the same meaning with respect to a foreign limited liability company's ability to "carry on, conduct or transact business" in New York. CIG's subsequent compliance with the publication requirement is therefore entitled to *nunc pro tunc* annulment of any prior suspension of its ability to do business in New York.

## Conclusion

For the foregoing reasons, the Debtor's challenge to the retention of the Deposit by the Mortgage Sellers is without merit as a matter of law. Accordingly, the Mortgage Sellers' motion to dismiss is granted, and the Debtor's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: May 6, 2010
      New York, New York

                                             */s/ Allan L. Gropper*
                                      UNITED STATES BANKRUPTCY JUDGE